David P. Becker and Bessie Becker, et al. [1] v. Commissioner. Becker v. Commissioner
Docket Nos. 1232-64 - 1234-64.
United States Tax Court
T.C. Memo 1966-55; 1966 Tax Ct. Memo LEXIS 225; 25 T.C.M. (CCH) 313; T.C.M. (RIA) 66055; March 17, 1966
A. L. Skolnik, 710 Plankinton Ave., Milwaukee, Wis., for the petitioners. Robert M. Burns, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Deficiencies in income tax have been determined by respondent against petitioners for the taxable year 1960 in the following amounts: David P. and Bessie Becker
$ 444.22
Clarence J. and Pearl R. Becker
2,693.01
Adolf and Margaret Herf
352.73
The only issue is whether Becker Meat and Provision Company, Inc., an electing subchapter S small business maintaining its accounts and reporting on an accrual method of accounting, may deduct certain amounts paid to an insurance *226 underwriter which issued its policy in pursuance of a pension plan directed by the board of directors of Becker Meat and Provision Company, Inc., to be placed into effect. Findings of Fact All stipulated facts are found as fact. Petitioners David P. and Bessie Becker are individuals residing at Milwaukee, Wisconsin. They filed a joint Federal income tax return for the taxable year 1960, on the cash basis, with the district director of internal revenue, Milwaukee, Wisconsin. Petitioners Clarence J. and Pearl R. Becker are individuals residing at Milwaukee, Wisconsin. They filed a joint Federal income tax return for the taxable year 1960, on the cash basis, with the district director of internal revenue, Milwaukee, Wisconsin. Petitioners Adolf and Margaret Herf, are individuals residing at Milwaukee, Wisconsin. They filed a joint Federal income tax return for the taxable year 1960, on the cash basis, with the district director of internal revenue, Milwaukee, Wisconsin. Becker Meat and Provision Company, Inc., hereinafter referred to as Becker, Inc., is an electing small business corporation, incorporated in Wisconsin on June 29, 1959, which files its Federal income tax returns *227 under subchapter S of the Internal Revenue Code of 1954. It filed a Federal income tax return for its fiscal year ended June 25, 1960, on an accrual basis, with the district director of internal revenue, Milwaukee, Wisconsin. Becker, Inc., by its president, C. J. Becker, executed a waiver of the statutory period for assessment, Form 872, whereby the period for the assessment of deficiency for the taxable year ended June 25, 1960, was extended to June 30, 1964. All of the outstanding stock of Becker, Inc., during the period involved in the instant cases, was held as follows: Shares
Bessie Becker
400
20%
Clarence J. Becker
1,300
65%
Adolf Herf
300
15%
Total
2,000
100%
On June 10, 1960, the directors of Becker, Inc., Clarence J. Becker, Adolf Herf, and Pearl R. Becker, passed a resolution concerning a pension plan for the employees of Becker, Inc., to be underwritten bythe Mutual Life Insurance Company of New York. The description of the pension plan, contained in the resolution, is as follows: All full-time permanent salaried employees, not covered under a union collective bargaining agreement with the company, shall be eligible if their continuous *228 service began on or before June 24, 1960, the date when the plan is to take effect, and not later than age 57 at nearest birthday, or if their continuous service began after the date of the plan upon the completion of one month of continuous service provided such continuous service began not later than age 55; that an employee shall become covered for annuity benefits on the contract date or on a contract anniversary provided he is then age 30 or over, his effective earnings are in excess of $400.00 per month, and he has completed at least 360 days of continuous service if such service began on or before the contract date. On June 21, 1960, Becker, Inc., executed and delivered to Harry R. Schultz, an agent of The Mutual Life Insurance Company of New York, a document entitled "Application and Proposal Specifications." This application contains an outline of the proposed pension plan. The application contains the following language: No contract for the Plan shall become effective unless (a) this application is approved by Mutual Of New York, (b) any necessary approval of the contract has been obtained by Mutual Of New York from the Insurance Department of the State or Province in *229 which it is to be delivered, and (c) if employees are to contribute, the required number of employees has enrolled by the Plan Date. If such conditions are met, the Plan shall become effective from the Plan Date. If the necessary contract or contracts for the Plan have not been issued and delivered within 90 days after the Plan Date because such conditions have not been met, any amounts paid towards premiums will be refunded by Mutual Of New York on request. The "Plan Date"shown on the application is June 24, 1960. An amount to be applied toward the initial premium under the plan was delivered to the insurance company in the form of Becker, Inc.'s check, dated June 21, 1960, in the amount of $1,000. This delivery was made concurrently with the delivery of the June 21, 1960, application to Harry R. Schultz, the agent of Mutual Of New York. The June 21, 1960, application was received in the home office of Mutual Of New York on June 27, 1960. The application was approved on June 29, 1960. The balance of the premium was prepaid to Mutual Of New York in the form of Becker, Inc.'s check, dated September 8, 1960, in the amount of $6,958.90. The pension plan contract, consisting *230 of 37 pages, was executed by The Mutual Life Insurance Company of New York and issued on September 21, 1960. The "Contract Date" shown on the contract is June 24, 1960. On August 3, 1960, Becker, Inc., requested that it be informed of the amount of the initial annual premium due. On August 11, 1960, Becker, Inc., was informed that its initial annual premium totaled $7,958.90. The employees of Becker, Inc., were interviewed individually on June 17 and 18, 1960, for the purpose of informing them about the pension plan. The Federal income tax return of Becker, Inc., for its fiscal year ended June 25, 1960, was due on September 15, 1960, and was timely filed on September 9, 1960. Ultimate Findings Becker, Inc.'s $1,000 check accompanying its application for a pension plan policy or contract constituted a mere deposit. No pension plan covering Becker, Inc.'s employees was in effect during its fiscal year ended June 25, 1960. Opinion Petitioners are the sole stockholders of Becker, Inc., an electing small business, which has elected under subchapter S of the Internal Revenue Code of 1954 to be taxed as a partnership. In their individual returns for 1960, they each reported *231 income from Becker, Inc., proportionate to their stockholdings but reduced in each case by a like proportion of an amount of $7,958.90 deducted from gross income by Becker, Inc., during its fiscal year ended June 25, 1960, as a "Contribution to Employees Pension Fund." The company filed its return for that year on an accrual basis. Of the above amount, $1,000 was delivered to The Mutual Life Insurance Company of New York with Becker, Inc.'s application for an annuity policy covering its employees prior to the close of Becker, Inc.'s fiscal year. The remainder was paid to the insurance company within the grace period provided an accrual basis taxpayer by section 404(a)(6) of the 1954 Code. Petitioners contend that Becker, Inc.'s liability to make the payments referred to became fixed during its fiscal year upon the adoption on June 10, 1960, by its board of directors of the resolution set forth in our findings and that therefore such payments are deductible by Becker, Inc., as an accrual basis taxpayer. Respondent takes the position that the payments in controversy were not made in pursuance of such a fixed liability because no liability to pay them existed until such time as the *232 insurance company had issued its contract underwriting Becker, Inc.'s proposed pension plan on September 21, 1960, subsequent to the grace period referred to above. It being agreed by the parties that accruability of an expense by any accrual basis taxpayer depends upon the fixing of the liability therefor during the taxpayer's taxable year, we find the only issue to be whether Becker, Inc.'s liability to make the involved payments became fixed during its fiscal year ended June 25, 1960. As we see this issue it is controlled by the general law of contract with particular reference to noncontributory pension plans. If, under the general law (there being no applicable Wisconsin statute), an enforceable obligation between Becker, Inc., and its employees came into existence upon the adoption of the above resolution by its board of directors, petitioners would prevail, but if no such enforceable obligation was effected thereby, decision must be for respondent. Case law seems settled that where, as here, a pension plan is adopted by an employer calling for no contribution by the employees to be covered thereby, no vested right with respect to the employer's putting the plan into effect *233 exists in the employees. It is held to be a mere gratuity lacking any consideration which would constitute it a binding contract. This is especially held to be true where, as here, no action is taken by the employees with respect to the plan within Becker, Inc.'s fiscal year. . Although this record is silent as to the date when any of the company's employees enrolled in the plan, there is some evidence which indicates that no such enrollment took place until subsequent to the issuance of the insurance company's policy. The evidence referred to is Exhibit 11-K, the contract of Mutual Life Insurance Company of New York and more particularly Article 2, Section C thereof which provides, inter alia, for the furnishing to the insurer of an individual application for membership by each employee including his designation of beneficiary. Inasmuch as this is the only provision designating the procedure for becoming a member, we conclude that, although members' benefits were to be computed as though, being otherwise eligible, they had become members on June 24, 1960, they nevertheless could have taken no action *234 to become formally recorded as a member until subsequent to the delivery of the insurance contract on or about September 21, 1960, nearly 3 months after the close of Becker, Inc.'s fiscal year. Although the stipulation filed herein designates the $1,000 initially delivered by Becker, Inc., to the insurance company "a partial payment" and as having been "paid", we find other stipulated facts and exhibits inconsistent with such designation, and we are therefore required to construe the stipulation in the light of such other evidence. Exhibit 7-G, the application made by Becker, Inc., to the insurance company, contains the following provisions: $1,000.00 has been paid to be applied towards the initial premiums under the Plan described in Part II on the reverse side hereof. No contract for the Plan shall become effective unless (a) this application is approved by Mutual Of New York, (b) any necessary approval of the contract has been obtained by Mutual Of New York from the Insurance Department of the State or Province in which it is to be delivered, and (c) if employees are to contribute, the required number of employees has enrolled by the Plan Date. If such conditions are met, the *235 Plan shall become effective from the Plan Date. If the necessary contract or contracts for the Plan have not been issued and delivered within 90 days after the Plan Date because such conditions have not been met, any amounts paid towards premiums will be refunded by Mutual Of New York on request. Furthermore, a employee's coverage shall not become effective unless he is actively at work. It is understood that no person (except an Executive Officer of Mutual Of New York) has authority to modify, enlarge or vary any contract or to waive any requirement in any contract or in this application. From this language and the fact that the final issuance of the policy remained contingent during the taxable year of Becker, Inc., before us, we conclude that characterization of the $1,000 transfer as a payment or as having been paid is not supported by the evidence. In fact the evidence clearly discloses that only when the amount was finally applied upon the total premium on the issuance of the policy did the transaction amount to a payment. Until that time we hold it was a mere deposit contingently subject to being refunded to Becker, Inc. Contingent liabilities are not accruable business *236 expense. ; , affd. (C.A. 6), certiorari denied . Petitioners rely heavily upon the fact that when issued the annuity policy provided for an effective date of June 24, 1960, within Becker, Inc.'s fiscal year, as proof of the existence during that year of a liability to pay the premium thereon. We find this fact falls short of such proof. As mentioned above, the only effect of this predating is to fix the date of coverage of the employees. So far as the record shows, as a practical matter, no such coverage actually existed for it seems clear to us that no employee could or did become covered, regardless of his eligibility, until he made application therefor not earlier than September 21, 1960, the date of issuance of the policy. Once having filed his application, he might then have his benefits computed as of the effective date of the policy, but this is not proof that he was covered as of that date. Even though he might be eligible for benefits at the effective date, unless and until he had at least applied for coverage he could collect *237 no benefits. In any event the facts in this case do not convince us that the mere passage of the resolution referred to by Becker, Inc.'s board of directors constituted a pension plan. It seems clear to us that it amounts only to a prospective directive by the board to designated officers to place a plan into effect in the future, such plan to contain features contained in the resolution. We find the plan did not come into existence until the issuance of the involved policy by the designated insurance company; that the policy constitutes the plan, not the resolution. We hold that no fixed liability of Becker, Inc., to pay any premium on the annuity policy and no fixed liability to make any contribution to an annuity or pension plan existed prior to September 21, 1960, the policy date. The liability for such payments not having become fixed during Becker, Inc.'s fiscal year ended June 25, 1960, such payments do not constitute accruable deductions, , and Abingdon Potteries, Inc; , and proportionate amounts thereof must be added to petitioners' taxable income for the year at issue as respondent has *238 done in his deficiency notice. Decisions will be entered for the respondent. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Clarence J. Becker and Pearl R. Becker, Docket No. 1233-64, and Adolf Herf and Margaret Herf, Docket No. 1234-64.↩